20CA0024 Flores v Flores 10-21-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA0024 Adams County District Court No. 18CV68 Honorable Rayna Gokli McIntyre, Judge Robert A. Flores, Plaintiff-Appellant and Cross-Appellee, v. Joaquin R. Flores, Defendant-Appellee and Cross-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE J. JONES Freyre and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 21, 2021 Robert A. Flores, Pro Se Fischer & Fischer, P.C., Ronnie Fischer, Jennifer K. Fischer, Lisa C. Secor, Denver, Colorado, for Defendant-Appellee and Cross Appellant 
1 ¶ 1 In this contract dispute, plaintiff, Robert A. Flores, appeals the district court’s judgment entered on jury verdicts in favor of defendant, Joaquin R. Flores, his son.1 Joaquin cross-appeals the district court’s order denying his post-trial motion relating to damages. We affirm. I. Background ¶ 2 This case arose from a dispute over the ownership of real property (the Xavier property). In 2003, Joaquin purchased the Xavier property for Robert to live in. Robert funded the down payment, but the property is titled in Joaquin’s name because he financed the rest of the purchase price, taking out two loans secured by the property. ¶ 3 Joaquin paid the mortgage on and the expenses related to the property. From 2003 through late 2011, Robert paid Joaquin $1,500 per month, which covered most, but not all, of the mortgage and expenses. Malinda Flores regularly maintained a record of Robert’s payments and shortfalls. 1 Because both parties (and other witnesses) share the same last name, we refer to them by their first names to avoid any confusion. In doing so, we intend no disrespect. 
2 ¶ 4 From December 2011 through April 2017, Robert made the monthly $1,500 payments only sporadically. Robert didn’t make any payments thereafter. ¶ 5 In mid-2018, Robert sued Joaquin, claiming that Joaquin had breached an oral agreement that Joaquin would convey the title to Robert. The agreement, Robert says, required him to make monthly payments for the mortgage and expenses to maintain the property in exchange for equity. He alleged that the parties orally agreed that he could “skip payments” and that he stopped making payments in 2017 because Joaquin claimed ownership of the property. Robert also asserted claims for breach of fiduciary duty, civil theft, quantum meruit, and unjust enrichment. ¶ 6 Before answering the complaint, Joaquin moved to dismiss it. The court granted that motion in part, dismissing the breach of fiduciary duty, civil theft, and quantum meruit claims, leaving only the breach of contract and unjust enrichment claims standing. ¶ 7 Joaquin answered the complaint. He denied ever agreeing to purchase the Xavier property to later convey it to Robert or that Robert had any equity in it. Joaquin asserted that he was actually paying the property’s mortgage and most of the expenses required 
3 to maintain it. He claimed that he intended only for Robert to live in the Xavier property in return for payment of rent and any related costs. Joaquin asserted a counterclaim against Robert for breach of contract based on Robert’s failure to pay rent and all related expenses on the Xavier property, which Joaquin characterized as “lease payments.” ¶ 8 Robert moved to amend his complaint to add a variety of claims. The court denied that motion. ¶ 9 Before trial, Joaquin moved for summary judgment on Robert’s remaining claims and on his counterclaim for breach of contract. The court granted the motion as to Robert’s unjust enrichment claim because a contract existed between the parties. The court denied the motion as to the breach of contract claims, leaving only those claims to be resolved. ¶ 10 At the end of trial, the jury found in favor of Joaquin but didn’t award him any damages. ¶ 11 Joaquin filed a motion for judgment notwithstanding the verdict under C.R.C.P. 59, arguing that the uncontroverted evidence showed that he was entitled to $72,000 in damages. He asked for 
4 an award of that amount or, alternatively, a new trial on damages. The district court denied that motion. ¶ 12 Robert appeals and Joaquin cross-appeals. II. Discussion ¶ 13 Robert contends that the district court erred by (1) admitting an Excel spreadsheet itemizing Robert’s payments and shortfalls (Exhibit D) as a business record under CRE 803(6); (2) excluding text messages and evidence of a telephone conversation between Joaquin and his brother, Sean, as evidence of settlement discussions under CRE 408; (3) demonstrating bias; (4) denying his motion for a mistrial based on the admission of Exhibit D; (5) excluding evidence of the change in his relationships with his sons; (6) rejecting his proposed jury instructions; (7) granting Joaquin partial summary judgment; and (8) denying his pretrial motion to amend his complaint. We reject all of these contentions. ¶ 14 But first, we address Joaquin’s cross-appeal because our resolution of the issue he raises — that the district court erroneously instructed the jury on his counterclaim — impacts several of Robert’s arguments. 
5 A. Cross-Appeal ¶ 15 Joaquin contends that the district court erred by denying his motion for judgment notwithstanding the verdict. Specifically, he argues that the district court erroneously instructed the jury on his breach of contract counterclaim. The mistake was that the verdict form for Joaquin’s counterclaim substituted “plaintiff” for “defendant” in one of the questions the jury was to answer (whether Joaquin had substantially performed his obligations under the contract), and when the jury answered “no” to that question the form directed it not to answer whether Joaquin had been damaged as a result of Robert’s breach. (Joaquin also points to a similar problem in Instruction 27 setting forth the elements of his counterclaim.) So the jury found for Joaquin on his counterclaim, but didn’t award him any damages. ¶ 16 The problem for Joaquin is that his counsel didn’t preserve this issue for appeal by timely objecting to the erroneous verdict form. C.R.C.P. 51 says that “[a]ll instructions shall be submitted to the parties, who shall make all objections thereto before they are given to the jury. Only the grounds so specified shall be considered on motion for a new trial or on appeal . . . .” (Emphasis added.) 
6 ¶ 17 Therefore, a party’s failure to make a timely objection to an erroneous instruction before the jury receives it waives the ability to raise the error on appeal. See Harris Grp., Inc. v. Robinson, 209 P.3d 1188, 1195, 1201 (Colo. App. 2009); Smiley’s Too, Inc. v. Denver Post Corp., 935 P.2d 39, 42 (Colo. App. 1996). ¶ 18 Joaquin argues that this issue was preserved for appeal because counsel and the court caught one error in responding to a jury question and simply overlooked the other. He is incorrect. Objecting to, or catching, one error didn’t preserve an argument as to another. The fact is, his counsel failed to timely object to the error he raises on appeal. Thus, the claim of error was waived and we won’t consider it. ¶ 19 Joaquin invites us, however, to review the issue for plain error, in the interest of justice. We decline the invitation. Joaquin’s counsel tendered the verdict form (and elemental instruction) containing the mistake, as the district court found in denying Joaquin’s post-trial motion and as Joaquin concedes on page 12 of his answer brief. Plain error review in civil cases is extremely rare. We don’t think applying it is appropriate when the error the party complains of is of the party’s own making. See JW Constr. Co. v. 
7 Elliott, 253 P.3d 1265, 1271 (Colo. App. 2011); Harris Grp., 209 P.3d at 1195 (plain error review of instructional issues is rare and should occur only when necessary to avoid unequivocal and manifest injustice); see also McGill v. DIA Airport Parking, LLC, 2016 COA 165, ¶¶ 9-10 (a party may not complain of an error on appeal that he invited or injected into the case). ¶ 20 We therefore affirm the jury’s award and the district court’s denial of Joaquin’s post-trial motion. B. Appeal 1. Exhibit D ¶ 21 Because Robert raises several issues concerning Exhibit D, we address them together. Robert contends that the district court erred by (1) admitting Exhibit D into evidence as a business record under CRE 803(6); (2) admitting the exhibit though Joaquin hadn’t disclosed it before trial; (3) admitting Exhibit D even though it didn’t meet the requirements of a summary under CRE 1006 because it wasn’t supported by original documentation; and (4) denying his motion for a mistrial based on the inadmissibility of the exhibit. ¶ 22 Joaquin alleged that Robert breached a contract by failing to make agreed-upon payments. Robert didn’t dispute that he didn’t 
8 make payments; he alleged that he wasn’t required to because of an oral agreement between the parties. Exhibit D didn’t have anything to say about that issue. Rather, Joaquin introduced Exhibit D to establish the monetary damages he incurred as a result of Robert’s breach. But despite the jury’s finding that Robert breached the contract, it didn’t award Joaquin any damages. We have affirmed that aspect of the judgment. Thus, holding that the court erroneously admitted Exhibit D would be of no benefit to Robert, and therefore his arguments concerning the exhibit are moot. See Top Rail Ranch Ests., LLC v. Walker, 2014 COA 9, ¶ 45 (if a ruling on an issue wouldn’t have any practical effect on the judgment, the issue is moot); Comcast of California/Colorado, L.L.C. v. Express Concrete, Inc., 196 P.3d 269, 275-76 (Colo. App. 2008) (same); cf. Vanderpool v. Loftness, 2012 COA 115, ¶ 31 (jury findings against the plaintiff on the issues of liability and causation rendered harmless any issue relating only to damages); Dunlap v. Long, 902 P.2d 446, 448-49 (Colo. App. 1995) (jury determination that the plaintiffs suffered no injury or damages rendered harmless any error relating only to the defendant’s liability). 
9 ¶ 23 In any event, Robert’s complaints about Exhibit D are meritless. It was prepared in the ordinary course of business and modified only to omit information not relevant to the Xavier property. Robert hasn’t pointed to anything in the record coming close to showing an abuse of discretion. See, e.g., State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC, 2018 COA 69M, ¶¶ 74-75 (“If the record is a compilation of data, and the original data was prepared in compliance with [CRE 803(6)], the fact that the data was compiled into a spreadsheet or document for litigation does not affect its admissibility.”); People v. Flores-Lozano, 2016 COA 149, ¶¶ 12-17 (a computer spreadsheet qualified as a business record under Rule 803(6) because the preparer routinely investigated employee theft and regularly prepared spreadsheets to summarize suspect transactions from a point of sale system); People v. Ortega, 2016 COA 148, ¶ 15. To the extent Robert challenges the exhibit based on Malinda’s alleged lack of skill as a bookkeeper, that 
10 challenge goes to the weight of the evidence, not its admissibility. See In re Estate of Fritzler, 2017 COA 4, ¶ 9.2 2. Text Messages and Phone Conversation Excluded Under CRE 408 ¶ 24 Joaquin moved in limine to exclude Exhibit 4 — text messages between Joaquin and Sean showing Joaquin’s attempt to settle his dispute with Robert. Robert argued in response that the messages weren’t excludable under CRE 408 because Sean didn’t have the authority to engage in any settlement negotiations with Joaquin on his behalf, he never received the texts, and the discussion took place prior to this litigation. ¶ 25 The district court ruled at trial that portions of the text messages were inadmissible under CRE 408 as evidence of settlement negotiations or were otherwise irrelevant. ¶ 26 During trial, Robert sought to question Sean about a conversation with Joaquin the day before the text-message 2 The district court found that Joaquin previously disclosed the exhibit in other litigation between the parties and had attached it to his summary judgment motion. The record supports the district court’s ruling. As for CRE 1006, Robert hasn’t demonstrated that the exhibit is a summary covered by the rule. 
11 exchange. After Joaquin’s counsel objected, the parties and the court discussed the admissibility of Exhibit 4 and the telephone conversation. The next day, the court ruled evidence of the telephone conversation was inadmissible when it ruled similarly as to Exhibit 4. Robert made an offer of proof that Joaquin wanted to buy Robert a car and told Sean he should “take care” of Robert. ¶ 27 Robert contends that the district court erred by excluding this evidence under CRE 408. But he doesn’t coherently explain how the evidence was relevant. As best we can tell, he asserts that the evidence could have countered Joaquin’s testimony about his efforts to resolve the dispute; that is, Joaquin gave a “one-sided rendition regarding settlement attempts.” But some of the testimony to which Robert points was only Joaquin saying that he, in contrast to Robert, acted as if he owned the property. And almost all the rest was elicited by Robert on cross-examination. He, not Joaquin, therefore opened the door, and it should go without saying that one party may not open the door to additional irrelevant testimony he wishes to introduce by himself eliciting irrelevant testimony. 
12 ¶ 28 In sum, we conclude that the district court didn’t abuse its discretion by excluding this evidence. 3. Judicial Bias ¶ 29 Robert contends that the district court demonstrated bias by failing to reprimand opposing counsel for unruly behavior during trial and making certain comments that denied him a fair trial. We disagree. ¶ 30 “Courts are charged with a duty to maintain order within the courtroom and to insure a fair trial.” People v. Aleem, 149 P.3d 765, 774 (Colo. 2007). Courts have inherent authority to use all power reasonably necessary to protect their efficient function, dignity, independence, and integrity. People ex rel. State Eng’r v. Sease, 2018 CO 91, ¶ 20; see also Wilkerson v. Dist. Ct., 925 P.2d 1373, 1377 (Colo. 1996) (courts have broad discretion to regulate conduct in their courtrooms and to preserve order). ¶ 31 Robert argues, as best as we can decipher, that opposing counsel’s behavior during trial was disruptive and personally disrespectful. We reject Robert’s assertions as follows:  Robert says that opposing counsel demonized him during pretrial proceedings by moving to introduce non-
13 character evidence under CRE 404(b) to show his modus operandi, i.e., his distinct pattern of filing lawsuits against his family members when he doesn’t get his way. But the district court denied opposing counsel’s motion to introduce the evidence at trial because it wasn’t relevant to a material issue in this case.  Robert says that the district court acted with undue haste by imposing “the most severe sanction possible” when defense counsel misrepresented to the court that he had violated C.R.C.P. 26(a) because he failed to provide disclosures during the discovery process. However, Joaquin’s attorney conceded that she was mistaken about the disclosures and withdrew her objection to Robert’s expert testifying at trial. The district court acknowledged that its sanction was based “on an error of fact” and that, therefore, “no C.R.C.P 37 sanction [was] warranted” against Robert.  Robert says that the district court failed to properly reprimand defense counsel for insulting him by saying (twice) that he was “full of crap.” We agree that opposing 
14 counsel’s remarks were disrespectful and unprofessional. But the district court promptly addressed the situation by warning Joaquin’s counsel that although the trial had been frustrating, she shouldn’t address Robert in that manner. Counsel conceded the point and responded, “I apologize. You’re right. It’s unprofessional . . . . I have been taking pot shots all day and I just got fed up.” The remarks were isolated, the court took appropriate action, counsel acknowledged that her remarks were improper, and counsel apologized. Cf. Fyffe v. Mass. Bay Transp. Auth., 17 N.E.3d 453, 464-74 (Mass. App. Ct. 2014) (a court’s failure to sufficiently reprimand the plaintiff’s counsel for her deliberate and repeated disregard of its directives prejudiced the defendant).  Robert says the district court insulted him by saying, outside the jury’s presence, “Don’t interrupt. It’s difficult for me. I’m not as smart as you, I can’t do two things at once, so give me one moment.” The judge’s comments, though perhaps somewhat intemperate, were borne out of frustration following Robert’s constant interruptions 
15 during trial. On the last day of trial, the district court made a record about Robert’s behavior during trial as follows: I will just note that I have told [Robert] dozens of times to stop interrupting me, to stop interrupting the witnesses. At one point during the testimony when he was testifying, he threw a binder of exhibits down, later said that he had a hand injury, but he — he threw that binder of exhibits down and stood up while he did that. . . . . Initially in this trial, I did ask [Robert] not to interrupt me outside of the presence of the jury, but it continued. It’s not in the jury’s best interest in terms of time — or this Court’s — to excuse the jury every time that [Robert] violates the order not to interrupt. . . . . There have been dozens and dozens of times where I have been speaking, and before I’ve even finished the words that are coming out of my mouth, [Robert] interrupts me. And so again, I decline to accept his statement that he thinks I am done speaking. I have already put on the record that if [Robert] continues to interrupt me, it is going to disrupt the record. And if the jury finds against him, then that is going to cause an issue for appeal. ¶ 32 The record amply supports the court’s characterization of Robert’s conduct. And we see no real prejudice as a result of the 
16 one sarcastic remark. See Clements v. Davies, 217 P.3d 912, 917-
18 (Colo. App. 2009) (a judge’s comment that “[w]e are all running out of patience,” made outside the presence of the jury, didn’t deny the appellant a fair trial). Likewise, we reject any suggestion that the court gave preferential treatment to Joaquin’s counsel. 4. Robert’s Testimony About His Family Relationships ¶ 33 Robert contends that the district court abused its discretion by prohibiting him from testifying about and asking witnesses about changes in his family relationships to show that he didn’t breach the agreement because there was an oral modification. More specifically, Robert argues that the evidence was relevant to show that he didn’t breach the agreement with Joaquin because it was reasonable for him to think that he could skip making monthly payments on the Xavier property given his then-close relationship with his sons. We disagree. ¶ 34 For the most part, Robert merely cites to portions of the record where evidence was excluded; he doesn’t attempt to argue why particular evidence was relevant. We won’t review such undeveloped and conclusory assertions. People v. Thompson, 2017 COA 56, ¶ 199; Cikraji v. Snowberger, 2015 COA 66, ¶ 21 n.3; see 
17 also C.A.R. 28(a)(7)(B). Likewise, though we construe pro se filings liberally, “liberal construction does not include inventing arguments not made by the pro se party.” Minshall v. Johnston, 2018 COA 44, ¶ 21. ¶ 35 In any event, we see no abuse of discretion by the district court. To give one example, Robert wanted to testify about letting his granddaughter go on a vacation with his son. That had no bearing on the issues in the case. Further, as previously discussed, Robert’s argument that Joaquin agreed to modify the contract to allow him to skip payments is moot because the jury didn’t award Joaquin any damages. 5. Jury Instructions ¶ 36 Robert contends that the district court erred by rejecting certain of his proposed jury instructions. The only one he identifies in his opening brief, however, is his tendered adverse inference instruction based on spoliation.3 3 Because Robert’s assertion as to other unspecified rejected instructions is completely undeveloped, we won’t address it. See People v. Thompson, 2017 COA 56, ¶ 199; Cikraji v. Snowberger, 2015 COA 66, ¶ 21 n.3; see also C.A.R. 28(a)(7)(B). 
18 ¶ 37 We review a district court’s ruling on a proposed jury instruction for an abuse of discretion, and we won’t set it aside unless it was manifestly arbitrary, unreasonable, or unfair. See Aloi v. Union Pac. R.R. Corp., 129 P.3d 999, 1004 (Colo. 2006) (“[A] trial court has wide discretion to provide an adverse inference instruction.”); Warembourg v. Excel Elec., Inc., 2020 COA 103, ¶ 53. ¶ 38 Robert submitted a proposed jury instruction concerning the destruction of evidence. In essence, Robert argued that Joaquin had destroyed certain bank records used to prepare Exhibit D. The district court rejected Robert’s tendered spoliation instruction because it wasn’t supported by any evidence that Joaquin had actually destroyed or hidden any evidence from Robert during discovery. ¶ 39 Robert questioned Malinda about the bank statements she had used to enter data in Exhibit D. Malinda testified that she shredded banks statements after ten years in the regular course of business. ¶ 40 Robert’s contention fails because a spoliation instruction is appropriate only when a party willfully destroyed evidence relevant to pending, imminent, or reasonably foreseeable litigation. See 
19 Warembourg, ¶ 84; Castillo v. Chief Alt., LLC, 140 P.3d 234, 236 (Colo. App. 2006). Robert didn’t present any evidence of any such conduct. 6. Pre-Trial Motions ¶ 41 Robert’s last two contentions are titled “Summary Judgment” and “Plaintiff’s First Motion to Amend Complaint,” respectively. He purports to challenge the district court’s order granting partial summary judgment in Joaquin’s favor on Robert’s unjust enrichment claim and the order denying his motion to amend the complaint to add a civil theft claim. But Robert fails to explain how the district court erred. Because Robert failed to adequately develop these arguments in his opening brief, we decline to review them. See Thompson, ¶ 199; Cikraji, ¶ 21 n.3; see also United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (“Judges are not like pigs, hunting for truffles buried in briefs.”). III. Conclusion ¶ 42 The judgment is affirmed. JUDGE FREYRE and JUDGE TOW concur.